UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERWIN MAYFIELD,

    Plaintiff,                                            Hon. Gordon J. Quist

v.                                                                          Case No. 1:12-CV-912

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on his alleged disability onset date. (Tr. 167). He successfully completed high school and worked previously as a screw machine tender, press operator, rubber mill tender, and material handler. (Tr. 28).

Plaintiff applied for benefits on August 19, 2008, alleging that he had been disabled since September 1, 2007, due to a back injury and hypertension. (Tr. 167-84, 210). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 95-166). July 22, 2010, Plaintiff appeared before ALJ Paul Jones with testimony being offered by Plaintiff and vocational expert, Rich Riedl. (Tr. 38-94). In a written decision dated August 10, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 19-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On September 4, 2007, Plaintiff reported to the emergency room complaining of back pain. (Tr. 310). An examination of Plaintiff's paralumbar spine revealed "mild" tenderness, but straight leg raising was negative and the results of the examination were otherwise unremarkable.

(Tr. 310). Plaintiff was administered several pain medications and also provided prescriptions for Vicodin[1] and Valium.[2] (Tr. 310).

On February 28, 2008, Plaintiff reported to the emergency room complaining of back pain which he rated as 9/10. (Tr. 312). An examination revealed the following:

> There is a focal area of tenderness at the right lower lumbar paraspinal region. There is no overlying erythema. There is no evidence of ecchymosis or contusion. He really has no midline tenderness over the spinous processes. Extremities: There is no evidence of muscle atrophy. Neuro: Patient has excellent strength in both lower extremities, proximal and distal muscle groups. He is ambulatory. He has good balance. He has +1 dep tendon reflexes at patellar tendons bilaterally. Normal sensation throughout.

(Tr. 312). Plaintiff was administered Dilaudid[3] and Norflex.[4] (Tr. 312). He was also provided prescriptions for Valium, Vicodin, Flexeril,[5] and ibuprofen. (Tr. 312).

Laboratory test results, dated March 21, 2008, indicate that Plaintiff tested positive for marijuana and benzodiazepine usage. (Tr. 407).

On June 16, 2008, Plaintiff reported to the emergency room complaining of back pain. (Tr. 327). An examination revealed the following:

---

[1] Vicodin is a narcotic pain reliever. *See* Vicodin, available at http://www.drugs.com/vicodin.html (last visited on January 9, 2014).

[2] Valium belongs to a class of drugs which act on the brain and central nervous system to "produce a calming effect." *See Valium*, available at http://www.webmd.com/drugs/drug-11116-Valium+Oral.aspx?drugid=11116&drugname=Valium+Oral (last visited on January 9, 2014). Valium is used to treat anxiety, acute alcohol withdrawal, seizures, and muscle spasms, as well as to provide sedation before medical procedures. *Id.*

[3] Dilaudid is a narcotic pain medication "similar to morphine." *See* Dilaudid, available at http://www.drugs.com/dilaudid.html (last visited on January 9, 2014).

[4] Norflex is a muscle relaxant that works by "blocking nerve impulses (or pain sensations) that are sent to [the] brain." *See* Norflex, available at http://www.drugs.com/search.php?searchterm=Norflex (last visited on January 9, 2014).

[5] Flexeril is a muscle relaxer used to treat "strains, sprains, and other muscle injuries." *See* Cyclobenzaprine, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html (last visited on January 9, 2014).

> Low back is examined. There is no edema, erythema or ecchymosis. There is generalized tenderness in the right paravertebral musculature with palpation. There are no muscle spasms appreciated. Straight leg raise is positive in the right, minimal on the left.

(Tr. 327). Plaintiff was administered Dilaudid, Toradol,[6] and Valium. (Tr. 327). Plaintiff was also given prescriptions for Vicodin, Valium, and Phenergan.[7] (Tr. 327).

On July 23, 2008, Plaintiff reported to the emergency room complaining of left leg pain. (Tr. 330). X-rays of Plaintiff's left leg were negative and the results of a physical examination were unremarkable. (Tr. 329-30). Plaintiff was administered Tramadol[8] which Plaintiff reported "did not significantly decrease his pain." (Tr. 330). Plaintiff requested "something additional for pain" and was provided Vicodin. (Tr. 330). Plaintiff was also given "a 6-pack of Vicodin to go." (Tr. 330).

On July 31, 2008, Plaintiff participated in an exercise stress test the results of which were "negative." (Tr. 345-49). This examination also revealed that Plaintiff's "fitness classification was above average." (Tr. 346).

On September 5, 2008, Plaintiff reported to the emergency room complaining of back pain. (Tr. 358-59). An examination revealed the following:

> The patient does have full range of motion about the neck. There is no meningeal signs noted. He does not have any midline cervical or thoracic pain. There is some mild lumbar spinous process pain noted

---

[6] Toradol is a nonsteroidal anti-inflammatory pain medication. *See* Toradol, available at http://www.drugs.com/toradol.html (last visited on January 9, 2014).

[7] Phenergan is an antihistamine which is used to treat allergy symptoms, motion sickness, and nausea. *See* Phenergan, available at http://www.drugs.com/phenergan.html (last visited on January 9, 2014). Phenergan is also used as a sedative or sleep aid. *Id.*

[8] Tramadol is a "narcotic-like" pain reliever. *See* Tramadol, available at http://www.drugs.com/tramadol.html (last visited on January 9, 2014).

5

> with palpation. This pain is palpated down to the sacrum. There is noted to be a right-sided freely mobile soft mass just to the right, the lower lumbar spine. There is no pain with palpation or movement of this mass. The mass is not firm. He does have 5 out of 5 bilateral upper and lower extremity strength...There are no focal neuro[logical] deficits noted. Sensation is intact throughout.

(Tr. 358-59). Plaintiff was administered Dilaudid and Phenergan which Plaintiff reported did not fully resolve his pain. (Tr. 359). Plaintiff was then administered Valium. (Tr. 359). Plaintiff was also provided Vicodin and Soma.[9] (Tr. 359).

On October 7, 2008, Plaintiff participated in a MRI examination of his lumbar spine the results of which revealed (1) sacralization of the L5 vertebra,[10] and (2) bilateral neural foraminal stenosis at L3-4 and L4-5. (Tr. 403-04).

On January 8, 2009, Plaintiff reported to the emergency room complaining of back pain. (Tr. 370). An examination of Plaintiff's back revealed "tenderness diffusely along the paralumbar musculature, greater on the right." (Tr. 370). Plaintiff was administered Dilaudid and Phenergan and also provided a prescription for Vicodin. (Tr. 370).

On March 17, 2009, Plaintiff was examined by Dr. Robert Bach. (Tr. 398). Plaintiff reported that "he would like a note to say he is disabled." (Tr. 398). The doctor responded that he had "no investigative studies that would indicate disability at this time." (Tr. 398). The doctor, however, did offer Plaintiff a "disability examination," but Plaintiff declined. (Tr. 398).

---

[9] Soma is a muscle relaxer. *See* Soma, available at http://www.drugs.com/soma.html (last visited on January 9, 2014).

[10] Sacralization refers to the "anomalous fusion of the fifth lumbar vertebra with the first segment of the sacrum." *See* Sacralization, available at http://medical-dictionary.thefreedictionary.com/sacralization (last visited on January 10, 2014).

On April 6, 2009, Plaintiff reported to the emergency room complaining of back pain. (Tr. 379). The results of an examination were unremarkable. (Tr. 379). Plaintiff was administered Vicodin and also given additional Vicodin and Robaxin.[11] (Tr. 379).

On June 9, 2009, Plaintiff was examined by Dr. Daniel Mankoff. (Tr. 436-37). Plaintiff reported that he was experiencing back and leg pain which increases "with essentially any activity as well as prolonged static postures." (Tr. 436). A physical examination revealed the following:

> The patient changes slowly from a sitting to standing position. His gait is antalgic favoring his right leg. He states he has difficulty standing on his heels and toes although is able to do this. He complains of significant pain with grimacing with both flexion and extension, but he does have good range of motion. There is mild right sided lumbar tenderness. Straight leg raising is negative for radicular pain, but he does complain of muscle tightness. Reflexes are +2. Sensation is subjectively decreased along the lateral aspect of this leg. There is no tenderness over the trochanter or sciatic notch.

(Tr. 436). The doctor noted that Plaintiff was engaged in "possible symptom magnification." (Tr. 436).

On June 22, 2009, Plaintiff reported to the emergency room complaining of back pain. (Tr. 389). An examination revealed the following:

> There is tenderness when I palpate even lightly across the paraspinous muscles of the lumbar spine. Straight leg test is negative bilaterally. No calf tenderness, no calf circumference discrepancy. Reflexes equal bilaterally. Patient is able to stand at the bedside, raise himself on his heels and toes.

---

[11] Robaxin is a muscle relaxer. *See* Robaxin, available at http://www.drugs.com/robaxin.html (last visited on January 9, 2014).

(Tr. 389). Plaintiff was administered Dilaudid and Phenergan and was also provided a prescription for Robaxin. (Tr. 389).

On September 8, 2009, Plaintiff participated in an EMG examination the results of which revealed "no definitive electrodiagnostic evidence of a bilateral lower extremity radiculopathy." (Tr. 426). The doctor further observed that he "did not see any motor denervation changes or any significant neurogenic motor unit changes." (Tr. 426).

On November 10, 2009, Plaintiff was examined by Physician's Assistant Deborah Hunter with Michigan Pain Consultants. (Tr. 490). Plaintiff rated his pain as "between 8-10/10 in the lumbar spine with radiation toward his legs, right worse than left." (Tr. 490). Hunter reported that "per our narcotic contract with the patient, we did attempt to obtain a random urine drug screen on the patient today," but Plaintiff "was unable to provide a urine sample for us with multiple excuses throughout the visit." (Tr. 490). Accordingly, Hunter reported that "we will not be prescribing any more refills of his medication for him." (Tr. 490).

On January 6, 2010, Plaintiff was examined by Dr. John Keller with Great Lakes Neurosurgical Associates. (Tr. 469). Plaintiff reported that he was experiencing back pain which he rated as "8 out of 10 in severity." (Tr. 469). Plaintiff reported that "everything seems to make it worse" and "nothing really seems to relieve it." (Tr. 469). A physical examination revealed the following:

> Neurologically alert and oriented. Cranial nerves II-XII are intact. His motor strength is 5/5, but he has break away strength in his lower extremities to almost the ribs. He has a normal gait. He is limited on

flexion/extension of his back due to pain. There are no trigger points to palpation. He has negative Patrick's maneuver.[12]

(Tr. 469). Dr. Keller noted that an MRI of Plaintiff's lumbar spine revealed degenerative changes and foraminal stenosis at L4-5 and L5-S1. (Tr. 469). The doctor concluded that Plaintiff was unable to perform "any type of manual labor work." (Tr. 469). The doctor further observed that Plaintiff would likely require back surgery, but that such could be delayed for the time being. (Tr. 469).

On February 22, 2010, Dr. Mankoff completed a questionnaire regarding Plaintiff's residual functional capacity. (Tr. 470-73). The doctor reported that Plaintiff was unable to walk even one city block "without rest or severe pain." (Tr. 471). The doctor reported that Plaintiff can continuously sit for 15 minutes and continuously stand for 10 minutes. (Tr. 471-72). The doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. (Tr. 472). The doctor reported that Plaintiff required a job with a sit/stand option. (Tr. 472). The doctor reported that Plaintiff can "rarely" lift less than 10 pounds and can "never" lift 10 pounds or more. (Tr. 472). The doctor reported that Plaintiff can "rarely" climb stairs and can "never" twist, stoop, or crouch/squat. (Tr. 473).

On June 12, 2010, Dr. Derek Lado completed a questionnaire regarding Plaintiff's residual functional capacity. (Tr. 574-77). The doctor reported that Plaintiff can walk 1-2 city blocks "without rest or severe pain." (Tr. 575). The doctor reported that Plaintiff can continuously sit for 10 to 15 minutes and can continuously stand for 15 to 20 minutes. (Tr. 575-76). The doctor

---

[12] FABER (or Patrick) test is "a screening test for pathology of the hip joint or sacrum." *See* Special Tests of the Lower Extremity, available at http://physicaltherapy.about.com/od/orthopedicsandpt/ss/LEspecialtests_2.htm (last visited on January 9, 2014). The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee. The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction. The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip. The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg." *Id.*

reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. (Tr. 576). The doctor reported that Plaintiff would require a job with a sit/stand option. (Tr. 576). The doctor reported that Plaintiff can "occasionally" lift 10 pounds, can "rarely" lift 20 pounds, but can never lift 50 pounds. (Tr. 576). The doctor reported that Plaintiff can "rarely" twist and stoop and can "never" crouch/squat or climb stairs. (Tr. 577).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[13] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable

---

[13] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) lumbar stenosis with radiculopathy; (2) hypertension; and (3) substance abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-22).

The ALJ next determined that Plaintiff retained the capacity to perform sedentary work[14] subject to the following limitations: (1) he can lift up to ten pounds occasionally; (2) he can stand/walk for two hours and sit for six hours during an 8-hour workday with normal breaks; (3) he must be able to sit or stand at will; (4) he can frequently kneel, crouch, and crawl; (5) he can occasionally balance, stoop, and climb ramps/stairs; (6) he can never climb ladders, ropes, or scaffolds; and (7) he must avoid concentrated exposure to hazards such as unprotected heights and operating moving machinery. (Tr. 22). The ALJ determined that Plaintiff could not perform his past

---

[14] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

11

relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Rich Riedl.

The vocational expert testified that there existed approximately 5,300 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 87-90). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.        The ALJ Properly Discounted Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that he experiences back pain which radiates into his legs. (Tr. 67). Plaintiff reported that his legs occasionally "get weak...get numb. . .[and] just g[i]ve out" on him. (Tr. 67). Plaintiff reported that his sleep is interrupted by pain several times nightly. (Tr. 65). Plaintiff reported that he is unable to perform any household duties. (Tr. 66-67). Plaintiff testified that he can sit for only 10-15 minutes and can lift "probably less than 5 pounds." (Tr. 68). The ALJ discounted Plaintiff's subjective allegations, a determination which Plaintiff argues constitutes error.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discounted Plaintiff's allegations of extreme limitations on several grounds. The ALJ first observed that Plaintiff's allegations are inconsistent with the medical record. While the medical evidence supports the conclusion that Plaintiff is substantially limited physically, such does not support Plaintiff's allegations that he is, essentially, unable to perform any work-related activities. The ALJ also noted that Dr. Mankoff, one of Plaintiff's treating physicians, noted the possibility that Plaintiff was engaged in symptom magnification. The ALJ further referenced Plaintiff's substance abuse. The Court concludes, therefore, that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

## II.  The ALJ Properly Evaluated the Medical Evidence

Two of Plaintiff's treating physicians, Dr. Mankoff and Dr. Lado, offered opinions concerning Plaintiff's physical abilities. While the doctors' opinions largely coincide with the ALJ's RFC determination, the doctors nevertheless articulated certain restrictions that limit Plaintiff to a degree greater than that recognized by the ALJ. For example, both doctors reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. Both doctors also reported that Plaintiff's ability to twist, stoop, and crouch was more limited than recognized by the ALJ. Dr. Mankoff also reported that Plaintiff can rarely lift less than 10 pounds. The ALJ concluded that these opinions "cannot be given controlling or even deferential weight." (Tr. 27). Plaintiff asserts that he is entitled to relief because the ALJ failed to provide sufficient reasons for discounting the opinions of his treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

15

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

16

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As noted above, the ALJ discounted the opinions expressed by Dr. Mankoff and Dr. Lado. In support of this conclusion, the ALJ stated that:

> Their conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record. The only plausible explanation for their pessimistic assessments of claimant's functional capacities is that such assessments were based on unquestioning acceptance of claimant's subjective complaints. . .Claimant undoubtedly has some functional limitations associated with his physical impairments, but the weight of the evidence of record does not establish claimant is unable to work. Claimant is consistently noted as being in no apparent distress and has multiple positive drug screens (Exhibits 33F and 4F). Although his MRI indicated some stenosis and possible impingement, his EMG was negative and he has inconsistent clinical findings which are not supportive of such extreme limitations (Exhibits 18F at 1, 27F at 10, 7, 2 and 1, 17F at 2, 28F at 2 and 35F at 1).

(Tr. 27).

The Court discerns no shortcoming in the ALJ's assessment. The results of numerous physical examinations revealed minimal impairment or limitation. Objective medical testing revealed degenerative changes in Plaintiff's spine, but no evidence of radiculopathy or other severe impairment or limitation. Dr. Mankoff even suggested that Plaintiff was magnifying his symptoms. In sum, the opinions expressed by Dr. Mankoff and Dr. Lado are inconsistent with the medical record as the ALJ recognized. The ALJ's conclusion, therefore, to afford less than controlling weight to the opinions in question is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 27, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge